J-S31004-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: B.A.N. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: B.A.N. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1934 MDA 2019 |

Appeal from the Order Entered November 4, 2019
In the Court of Common Pleas of Berks County Civil Division at No(s):
166-10-MH

BEFORE:  BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                   **FILED OCTOBER 26, 2020**

B.A.N. appeals the November 4, 2019 order extending for one year his involuntary commitment pursuant the Court-Ordered Involuntary Treatment of Certain Sexually Violent Persons statute[1] ("Act 21").  Berks County Assistant Public Defender, Eric Muhlenberg, Esquire, filed a petition to withdraw from representation and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  We grant the petition and affirm.

---

[1] Act 21 directs a juvenile court to order involuntary inpatient treatment for a sexually violent delinquent child ("SVDC") if it finds, "by clear and convincing evidence[,] that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence."  42 Pa.C.S. § 6403(d).  Once entered, the order is reviewed annually and may extend indefinitely, as long as the person continues to meet the criteria for involuntary inpatient treatment.  ***See*** 42 Pa.C.S. § 6404

The juvenile court succinctly summarized the facts and procedural history based upon the evidence adduced during the most recent Act 21 commitment hearing as follows:

> In 2004 the Berks County Juvenile Court adjudicated B.A.N. delinquent for rape and other sexual offenses arising out of his assault of a nine-year-old girl. He was successively placed in three secure settings. At each location he engaged in sexually aggressive, assaultive, and otherwise inappropriate behaviors. In December 2008, when he was nineteen, B.A.N. was charged with assaulting a female staff member at Northwestern Academy. He later pleaded guilty to aggravated assault and was sentenced to 11 to 23 months [of] incarceration.
>
> On October 14, 2009, the County of Berks filed a petition for involuntary commitment pursuant to [Act 21] seeking involuntary treatment for B.A.N. due to a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes him likely to engage in an act of sexual violence. The court held a hearing on the county's petition and on December 22, 2009, found that B.A.N. had a mental abnormality that met the criteria necessary for involuntary commitment for one year to the Sexual Responsibility Treatment Program . . . at Torrence State Hospital[.]
>
> . . . .
>
> Th[e juvenile] court held the annual review hearing pursuant to § 6404(b) of Act 21 on November 4, 2019. At the conclusion of the hearing, the court determined that the county had proven by clear and convincing evidence that B.A.N. continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality disorder that made him likely to engage in an act of sexual violence and recommitted him to Torrance State Hospital for a period of one year. This appeal followed.

Juvenile Court Opinion, 3/23/20, at 2-3 (cleaned up).

Appellant complied with the mandates of Pa.R.A.P. 1925, challenging the constitutionality of Act 21 and assailing the quantum of evidence that the Commonwealth adduced during the annual recommitment hearing. The juvenile court addressed those arguments in its Rule 1925(a) opinion, and Attorney Muhlenberg reiterated the issues as follows before concluding that this appeal was wholly frivolous:

1. Whether the Commonwealth failed to present sufficient evidence to prove by clear and convincing evidence that Appellant met the criteria for civil commitment under 42 Pa.C.S. § 6404(b)(2) in that he has mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior and that Appellant is likely to engage in acts of sexual violence.

2. Whether Act 21 violates the United States and Pennsylvania Constitutions in that Act 21 is punitive and thus requires a finding of proof beyond a reasonable doubt.

3. Whether Act 21 violates the Equal Protection clause of the United States and Pennsylvania Constitutions as it treats juveniles found to meet the criteria of Act 21 more harshly than adults who meet substantially similar criteria under SORNA in that Act 21 could amount to a life time inpatient commitment whereas SORNA only requires outpatient treatment.

Appellant's brief at 6-7 (footnotes and suggested answers omitted).

We must first confront Attorney Muhlenberg's request to withdraw. *Commonwealth v. Blauser*, 166 A.3d 428 (Pa.Super. 2017). In order to withdraw from appellate representation pursuant to *Anders*, certain procedural and substantive requirements must be met. Procedurally, counsel must: 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the

- 3 -

appeal would be frivolous; 2) furnish a copy of the brief to the juvenile; and 3) advise the juvenile that he or she has the right to retain private counsel or raise additional arguments that the juvenile deems worthy of the court's attention. *See Commonwealth v. Cartrette*, 83 A.3d 1030 (Pa.Super. 2013) (*en banc*).

Attorney Muhlenberg's petition to withdraw sets forth that he reviewed the entire record and concluded that there are no non-frivolous issues. Counsel furnished Appellant a copy of the *Anders* brief and a letter dated May 6, 2020, which informed Appellant that he had the right to retain new counsel or proceed *pro se* and raise additional arguments. Therefore, counsel complied with the procedural requirements.

Next, we examine whether counsel's *Anders* brief meets the substantive requirements as set forth by our Supreme Court in *Santiago*. The brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Commonwealth v. Daniels*, 999 A.2d 590, 593 (Pa.Super. 2010) (citing *Santiago, supra* at 361).

Instantly, the **Anders** brief summarized the factual and procedural history of this case and referred to the portions of the record that fail to support these issues with citations and discussion of pertinent case law. Thus, the brief is compliant with **Santiago**. Accordingly, we consider the issues raised in the **Anders** brief.

Preliminarily, we highlight that Appellant's assertion that Act 21 is punitive, and therefore the grounds for involuntary commitment must be proved beyond a reasonable doubt, is facially meritless. Our Supreme Court recently confronted this precise issue in **In re H.R.**, 227 A.3d 316, 335 (Pa. 2020) and held that Act 21 was not punitive.[2] The High Court reasoned as follows:

> Despite the fact that Act 21 imposes obvious affirmative disabilities or restraints upon SVDCs, our review of the remaining [pertinent] factors leads to the conclusion [that] the statutory scheme is not punitive in intent or effect. Act 21 provides treatment to SVDCs rather than imposing restrictions that were historically considered punishment, and does not promote the typically punitive goals of deterrence and retribution. Furthermore, Act 21 protects the public from SVDCs, who have never been convicted of a crime, but are subject to the statutory restrictions because they are dangerously mentally ill. Lastly, Act 21, including the 2011 amendments, cannot be said to be excessive in light of the danger posed to the public by SVDCs.

_____

[2] As Act 21 is not punitive, we also reject Appellant's contention that the indefinite nature of Act 21 violates the Eighth Amendment to the United States Constitution, which applies to punishment and fines that flow from criminal convictions. **Graham v. Connor**, 490 U.S. 386, 398, (1989). In the body of this memorandum, we discuss the analogous claim relating to Article I § 13 of the Pennsylvania Constitution, which has been applied to civil proceedings. Since both contentions were raised in Appellant's Rule 1925(b), we confront them in the capacity of our independent review of the record.

Based on all of the above, we conclude that Act 21 does not constitute criminal punishment.

*Id*. at 335. Thus, the statute's application of a clear and convincing evidentiary standard for imposing its requirements passes constitutional muster. **See In re J.C.** ___ A.3d ___, 2020 WL 2463048 (Pa.Super. 2020) (*en banc*) (applying **In re H.R.** to hold that Act 21 is not punishment and the standard of proof requiring clear and convincing evidence is constitutional).

In light of the foregoing precedent, Appellant's constitutional challenges to Act 21 are meritless. As our Supreme Court previously explained **In re H.R.**, Act 21 is not punitive. Therefore, application of the statute does not violate Appellant's constitutional protections.

As it relates to the remaining issues raised in the **Anders** brief, the following legal principles inform our review.

> We have explained that, at the [Act 21] hearing, it is the Commonwealth that bears the burden of showing by clear and convincing evidence that the person has a mental abnormality or personality disorder which results in serious difficulty in controlling sexually violent behavior that makes the person likely to engage in an act of sexual violence. If the Commonwealth meets this burden, the court is to enter an order committing the person to inpatient treatment for a period of one year. Our Supreme Court has defined clear and convincing evidence as testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue. Thus, the clear and convincing evidence test has been described as an intermediate test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt. Moreover, in conducting a sufficiency review, we must consider the evidence in the light most favorable to the Commonwealth which prevailed upon the issue at trial. With regard to sexually violent predator

assessments, the task of the Superior Court is one of review, and not of weighing and assessing evidence in the first instance.

*In re S.T.S., Jr.*, 76 A.3d 24, 38-39 (Pa.Super. 2013) (citations and quotation marks omitted).

In reviewing Appellant's argument that Act 21 violates the equal protection clauses of the United States and Pennsylvania Constitutions, we observe that "the essence of the equal protection doctrine is that like persons in like circumstances will be treated similarly, [however] the right to equal protection does not absolutely prohibit the Commonwealth from classifying individuals for the purposes of receiving equal treatment." *Probst v. Com., Dep't of Transp., Bureau of Driver Licensing*, 849 A.2d 1135, 1143 (Pa. 2004) (cleaned up). Furthermore, our evaluation of an equal protection challenge depends on the nature of the statutory classification at issue. *Id*. Three classifications exists: "(1) classifications which implicate a 'suspect' class or a fundamental right; (2) classifications implicating an 'important' though not fundamental right or a 'sensitive' classification; and (3) classifications which involve none of these." *Id*. 1143-44. If the statute affects a suspect class or a fundamental right, we construe it strictly in light of a compelling governmental purpose. *Id*. at 1144. When it implicates an important right or a sensitive classification, we employ a heightened standard of scrutiny to an important governmental purpose. *Id*. Finally, "if the statutory scheme falls into the third category, the statute is upheld if there is any rational basis for the classification." *Id*.

As Appellant asserts that Act 21 treats juveniles more harshly than adults who meet substantially similar criteria under SORNA, we employ the rational basis test to that classification. *See Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 313 (1976) (age classification is subject to rational basis review); *see also In re K.A.P.,* 916 A.2d 1152, 1161 (Pa. Super. 2007),*aff'd sub nom*, *In re K.A.P., Jr.*, 943 A.2d 262 (Pa. 2008) (applying rational basis review to determine whether predecessor to Act 21 treated juvenile offenders different from similarly-situated adult offenders). However, to the extent that Appellant also argues that ACT 21's involuntary commitment provisions restrict his right to physical freedom, we must determine whether the statute promotes a compelling state interest. *In re S.A.*, 925 A.2d 838, 846 (Pa.Super. 2007) (applying strict scrutiny to portion of Act 21 that implicates a juvenile's right to physical freedom).

Next, concerning the assertion that the indefinite nature of Act 21 violates Article I § 13 of the Pennsylvania Constitution, which prohibits the imposition of excessive fines and cruel punishments, we observe that, while "[t]he principle embodied in the constitutional provision is, of course, applicable in all proceedings, civil as well as criminal[,] . . . that cannot be excessive which is not punitive." *City of Scranton v. Peoples Coal Co.*, 117 A. 673, 676 (Pa. 1922). Thus, to the extent that Appellant's claim under our state constitution might be cognizable in the context of civil proceeding, he must nevertheless demonstrate that Act 21 is so excessive that it is effectively

tantamount to punishment. As noted, our High Court has held that it is not. *In re H.R.*, *supra* at 335.

After a thorough review of the certified record, the pertinent briefs, and the pertinent law, we affirm the Act 21 commitment order on the basis of the cogent and well-reasoned opinion entered on March 23, 2020, by the Honorable Scott E. Lash. Specifically, Judge Lash observed that the evidence adduced at the November 4, 2019 hearing sustained the finding that the Commonwealth established by clear and convincing evidence that "B.A.N. continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to mental abnormality or personality disorder that makes him likely to engage in act of sexual violence, the criteria found at §6404(b)(2) of Act 21." Juvenile Court Opinion, 3/23/20, at 7. Specifically, the court indicated that it was "convinced that there is a significant likelihood that B.A.N. will continue to engage in sexually violent behavior." *Id*. at 8. In relation to the remaining issues concerning equal protection and cruel and unusual punishment, Judge Lash highlighted that: 1) any age-based classification is rationally related to a legitimate goal providing treatment to sexually violent juveniles and protecting the public; 2) the restriction of the juvenile's right to physical freedom promotes both of those compelling state interests; and 3) the year-long commitment, with annual evidentiary hearings, is not an indefinite commitment in violation Article I §

13 of the Pennsylvania Constitution. *Id* at 15-18. As to all of the foregoing points, we adopt Judge Lash's reasoning as our own.

Finally, pursuant to **Commonwealth v. Flowers**, 113 A.3d 1246 (Pa.Super. 2015), we have independently examined the record to determine if there are any additional, non-frivolous issues. Finding no preserved non-frivolous issues, we grant counsel's petition to withdraw.

The petition to withdraw of Eric Muhlenberg, Esquire, is granted. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/26/2020

IN THE INTEREST OF

B.A.N.

: IN THE COURT OF COMMON PLEAS OF
: BERKS COUNTY, PENNSYLVANIA
: CIVIL DIVISION/COMMITMENT DOCKET
:
: No. 166-10-MH


Christine M. Sadler, Esquire, Solicitor for the County of Berks,
Glenn D. Welsh, Esquire, Assistant Public Defender for B.A.N.


MEMORANDUM OPINION, Scott E. Lash, J.        March 23, 2020

B.A.N. has appealed this Court's order of November 4, 2019, involuntarily committing him to Torrance State Hospital for a period of one (1) year pursuant to 42 Pa.C.S.A. § 6401 et seq. (Act 21). We submit this opinion pursuant to Pa.R.A.P. 1925(a).

In 2004 the Berks County Juvenile Court adjudicated B.A.N.[1] delinquent for rape and other sexual offenses arising out of his assault of a nine-year-old girl. He was successively placed in three secure settings. At each location he engaged in sexually aggressive, assaultive, and otherwise inappropriate behaviors. In December 2008 when he was nineteen, B.A.N. was charged with assaulting a female staff member at Northwestern Academy. He later pleaded guilty to aggravated assault and was sentenced to 11 to 23 months incarceration.

On October 14, 2009, the County of Berks filed a petition for involuntary commitment pursuant to 42 Pa.C.S.A. §6403 seeking involuntary treatment for B.A.N. due to a mental abnormality or personality disorder which results in serious

---

[1] B.A.N.'s date of birth is March 23, 1998.

difficulty in controlling sexually violent behavior that makes him likely to engage in an act of sexual violence. The Court held a hearing on the county's petition and on December 22, 2009 found that B.A.N. had a mental abnormality that met the criteria necessary for involuntary commitment. Pursuant to §6403(d) of Act 21 the Court ordered him committed for one year to the Sexual Responsibility Treatment Program (SRTP) at Torrance State Hospital (hereinafter "Torrance").

Except for periods of incarceration, B.A.N. has never left Torrance State Hospital. From 2010 to the present B.A.N. has had annual review hearings as required by §6404(b) of Act 21 and each year the Court has recommitted him to Torrance. He has continued to engage in physically and sexually aggressive behavior.[2]

B.A.N. assaulted a staff member at SRTP on March 5, 2014. On October 22, 2014, he pleaded guilty to aggravated assault with bodily injury to an officer and received 5 years probation. On August 17, 2015 he assaulted three SRTP staff members and on November 24, 2015, he again pleaded guilty to aggravated assault with bodily injury to an officer and was sentenced to two to four years in a corrections facility followed by two years probation. On February 9, 2016, the probation imposed on October 22, 2014, was revoked and he was re-sentenced to one to two years incarceration concurrent with the November 24, 2015 sentence and two years probation concurrent with the November

---

[2] The following narrative is derived from reports prepared by witnesses who testified at B.A.N.'s §6404(b) hearing held on November 4, 2019 and admitted unto the record as Exhibits 1-3.

2

24, 2015 sentence of probation. B.A.N. was denied parole and when his sentence expired on September 9, 2019 he was returned to Torrance.

On September 23, 2019, B.A.N. allegedly assaulted and injured a SRTP staff member. He was arrested and charged with two counts each of aggravated assault, terroristic threats, simple assault, disorderly conduct, and harassment and he was incarcerated in the Westmoreland County Prison.

This Court held the annual review hearing pursuant to §6404(b) of Act 21 on November 4, 2019. At the conclusion of the hearing the Court determined that the County had proven by clear and convincing evidence that B.A.N. continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality disorder that made him likely to engage in an act of sexual violence and recommitted him to Torrance State Hospital for a period of one year. This appeal followed.

B.A.N.'s first issue on appeal is that the Commonwealth – here the County of Berks – failed to prove by clear and convincing evidence that he met the criteria for civil commitment under 42 Pa.C.S.A. §6404(b)(2).

Section 6404(b)(2) of Act 21 requires the Court to determine by clear and convincing evidence that "the person continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to a mental abnormality or personality disorder that makes the person likely to engage in an act of sexual violence...." The

3

standard of "clear and convincing evidence" is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue. In the Interest of M.V., 203 A.3d 1104 (Pa.Super. 2019).

At the November 4, 2019 hearing, Dr. Veronique Valliere, a licensed clinical psychologist who is a member of the Sexual Offender Assessment Board, testified that she has conducted annual evaluations of B.A.N. since 2009 and is aware of his underlying offenses and treatment. N.T. p.6 She said that while he was recently incarcerated, he called a female nurse to his cell and then masturbated while facing her. Id. p.9. According to Dr. Valliere this incident shows that B.A.N. is capable of committing sex offenses even in the most restricted environment, that his diagnosis of exhibitionistic disorder is still unmanaged, and he still poses a risk to others because he is unable to manage his sexual behavior. Id. p.9.

She than testified that B.A.N. has several diagnoses.

> The ones that are most relevant in terms of his pathway to reoffending and fitting the statutory definition of mental abnormality or personality disorder related to risk of recidivism of sexually dangerous behavior are his antisocial personality disorder, which is diagnosed through his long-standing criminal behavior, disregard for the rules, failure to respect the rights of others and responsibilities of society, criminal thinking, lack of empathy, and callousness regarding his behavior. This has been a diagnosis he's had since his commitment and contributes to his repeated rule violations, criminal behavior, assaultive behavior, and failure to respond to treatment intervention.
>
> And then [B.A.N.] also has paraphilic diagnoses as well. He has been diagnosed with, in this particular case exhibitionistic disorder, but he's also been

4

diagnosed with frotteuristic disorder, which is a disorder of nonconsensual sexual touching of others. So, his exhibitionistic disorder is clearly still active and is unmanaged, contributing to his failure to and difficulty in managing sexually dangerous behavior.

Id. pp. 10-11.

It was Dr. Valliere's professional opinion that B.A.N. is likely to engage in acts of sexual violence and meets the criteria for commitment. Id. p.11. She said B.A.N. does not take advantage of the treatment available to him and that it is highly improbable that he will overcome these disorders. She expressed concern that even while restricted to a secure environment i.e. prison, he continues to find a way to engage in sexual aggression against others, thereby demonstrating either a significant inability or severe unwillingness to manage himself. Id. p.12.

On redirect examination, Dr. Valliere testified that the fact B.A.N. was released from prison to Torrance and two weeks later assaulted a staff member is evidence that his antisocial thinking and decision-making are still active. Id. p.15. She further opined that his antisocial personality disorder when accompanied by his willingness to act out on his sexual deviance shows that he is not adhering to the responsibilities of society and is not demonstrating the internalized barriers to acting out on his deviant arousal. Id. p.16

"So some barriers would be anxiety or remorse or regret for what you've done or fear of negative consequences or concern for the negative impact on others. So, the fact that he isn't demonstrating any of those would show that he continues to live in an antisocial orientation and so doesn't have or utilize

5

the barriers that keep the rest of us from acting out in the same way." Id.

Dr. Stacie J. Barnes a licensed psychologist and clinical director of the SRTP has been involved in the attempts to treat B.A.N. since 2009. Id. p.21. She said that while he was in prison B.A.N. refused treatment for his sexual offenses. Id. p.22. This led to the concern that "if he's not engaging in treatment to address his sexual issues, then he would not have shown improvement on those issues." Id. p.25. After he returned to Torrance, B.A.N.'s behavior deteriorated over a two week period where he became increasingly violent, and he was placed on two-to-one then three-to-one staff observation. Because of his combativeness he was placed in physical restraints and confined to his bedroom. Id. pp.26-27. He said he was going to hurt staff and refused medication to calm him down. Id. p.27. Finally, B.A.N. did allegedly injure staff and he was arrested and taken to Westmoreland County Prison. Dr. Barnes concluded that based on his behaviors the feelings that feed into his disorders have not changed. Id. p.32.

Jamie Keilman, B.A.N.'s primary therapist, testified that he met regularly with B.A.N. after he was released from prison and returned to Torrance State Hospital. From September 9 through September 19, 2019, B.A.N. initially did well in acclimating to the SRTP. Id. p.37. However, starting on the evening of September 20, B.A.N. became agitated and aggressive. Id. p.38. Mr. Keilman and others were unsuccessful in deescalating B.A.N.'s behavior so he could return to the regular mix of people at the program. Id. p.39. Ultimately, the program

6

obtained a court order allowing for physical restraints in the form of shackles and these were used to restrain B.A.N. Id. pp. 39-40. Based on B.A.N.'s behaviors, Mr. Keilman had concerns for the staff of SRTP and for B.A.N.'s safety. Id. p.41.

This Court concluded that the County proved by clear and convincing evidence that B.A.N. continues to have serious difficulty controlling sexually violent behavior while committed for inpatient treatment due to mental abnormality or personality disorder that makes him likely to engage in act of sexual violence, the criteria found at §6404(b)(2) of Act 21. Dr. Valliere observed that B.A.N. engaged in sexually aggressive behavior toward a nurse while in prison, a secure environment, and this evidenced an inability or unwillingness to manage his exhibitionistic disorder while posing a risk to others. His antisocial personality disorder accompanied by his sexual deviance proves that B.A.N. does not have the internalized barrier that would prevent him from acting out. Dr. Valliere concluded B.A.N. is likely to engage in acts of sexual violence and meets the criteria for recommitment.

Dr. Barnes testified that B.A.N. has refused to take part in treatment designed to help him and that he is unable to make progress at SRTP. His antisocial personality disorder led to an alleged assault at Torrance within two weeks after his release from prison.

The truth of these facts have been established by testimony and documentary evidence and we do not hesitate to conclude that they are true. We are convinced that there is a significant

7

likelihood that B.A.N. will continue to engage in sexually violent behavior. Because the County met its burden of proof and established the criteria required by Act 21, we recommitted B.A.N. to Torrance State Hospital and did not err in doing so.

B.A.N.'s next issue is that Act 21 violates United States and Pennsylvania constitutions in several ways. First that it is punitive, and thus requires proof beyond a reasonable doubt, second that the clear and convincing evidence standard is unconstitutional, and finally that the indefiniteness of B.A.N.'s involuntary commitment constitutes cruel and unusual punishment.

There is a general presumption that all lawfully enacted statues are constitutional. Commonwealth v. Lee, 935 A.2d 865, 876 (Pa. 2007). "Accordingly, a statue will not be declared unconstitutional unless it clearly, palpably, and plainly violates the Constitution. All doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster. Thus, there is a very heavy burden of persuasion upon one who challenges the constitutionality of a statue." Commonwealth v. Beish, 207 A.3d 964, 967 (Pa.Super. 2019) (citations omitted).

Act 21 is not punitive. In the case of In re S.A., 925 A.2d 838 (Pa.Super. 2007), the trial court held a hearing pursuant to §6403(c) of Act 21 and found that S.A. had a mental abnormality or personality disorder which resulted in serious difficulty in controlling sexually violent behavior that made him likely to engage in an act of sexual violence and involuntarily committed

8

him to an in-patient treatment facility. On appeal S.A. argued, inter alia, that Act 21 was punitive rather than civil in effect.

In addressing this issue, the Superior Court applied the analysis set forth in Commonwealth v. Williams, 832 A.2d 962 (Pa. 2003) ("Williams II") where the Supreme Court adopted the two-level inquiry set forth in Smith v. Doe I, 538 U.S. 84 (2003) to determine whether legislation is unconstitutionally punitive. First, the Court must determine if the legislative intent was to punish. If the Court concludes the intent was non-punitive, then there must be an evaluation of the purpose and effect of the legislation to assess whether "the statutory scheme is nonetheless either in purpose or effect as to negate the legislature's non-punitive intent." Williams II, 832 A.2d at 971. The second step involves applying the seven factors set forth in Williams II, 832 A.2d at 973 citing Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-169 (1963).

> (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as punishment; (3) whether it comes to play only on finding of scienter; (4) whether its operation will promote the traditional aims of punishment-retribution and deterrence; (5) whether behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether is appears excessive in relation to an alternative purpose.

To determine actual intent the Court looked at §6401 of Act 21 and concluded "the General Assembly's intent in promulgating Act 21 was not to punish sexually violent delinquent children, but rather, to establish civil commitment procedures designed to

9

provide necessary treatment to such children and to protect the public from danger." In re S.A., 925 A.2d at 843.

The Superior Court than applied the seven-factor analysis of Williams II.

In applying these factors, the Court held that although there is restraint because the individual is involuntarily committed this one factor alone does not prove punitive purpose and the remaining factors must be evaluated. The Court then held that civil commitment of sexually violent individuals was not historically regarded as punishment; that no finding of scienter is required to commit a person under Act 21, only a determination of a "mental abnormality or personality disorder"; that Act 21 does not have a retributive effect nor does its possible deterrent purpose render the statue punitive; that whether behavior to which Act 21 applies is already criminal was conceded by S.A. as not supporting his position regarding the alleged punitive nature of Act 21; that the statue has a rational connection to non-punitive purposes viz., the safety of the public and the treatment of sexually violent delinquent children who due to a mental abnormality or personality disorder, have difficulty controlling sexually violent behavior, and that the sanction is not excessive to an alternative purpose because Act 21 provides for an annual review to guard against excessive commitment. In re S.A. at 844-45. The Court concluded that Act 21 is non-punitive in purpose and effect and does not constitute punishment. Hence, proof beyond a reasonable doubt is not required.

10

B.A.N.'s next issue is that the clear and convincing evidence standard is unconstitutional in light of Commonwealth v. Muniz, 164 A.3d 1189 (Pa. 2017), Commonwealth v. Butler, 173 A.3d 1212 (Pa.Super. 2017), Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. U.S., 570 U.S. 90 (2013)[3].

In Commonwealth v. Muniz, the Pennsylvania Supreme Court found that the registration provisions of the Pennsylvania Sex Offender and Notification Act (SORNA), 42 Pa.C.S. §9799.10 et seq. were punitive and therefore retroactive application of these provisions violated the ex post facto clauses of the United States and Pennsylvania Constitutions.

In Commonwealth v. Butler, the Superior Court, following the holding in Muniz, deemed the SORNA registration requirements punitive and part of the criminal punishment imposed upon a convicted defendant. "Accordingly, the general principles regarding illegal sentences are applicable to the case before us and when applied, we find that the inquiry ... implicates the legality of Appellant's sentence...." Butler, 173 A.3d 1215. The Court focused on §9799.24(e)(3) of SORNA which provides that at the conclusion of a hearing the Court determines whether the Commonwealth proved by clear and convincing evidence that the defendant is a Sexually Violent Predator (SVP). In determining the legality of the clear and convincing standard that is used to determine if a person is an SVP, the Court looked to Apprendi and Allyene.

---

[3] B.A.N. also cites In re J.C., No. 1391 WDA 2017 in this context. However, the panel decision in In re J.C. was vacated and the matter was scheduled for an en banc argument. Because the decision in this case is pending, there is no precedent to guide us.

11

> In *Apprendi* [ ] the Supreme Court of the United States held that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt....
>
> Subsequently in *Allyene* [ ] the [Supreme Court of the United States] held that any fact that increases the mandatory minimum sentence for a crime is an element that must be submitted to the jury and found beyond a reasonable doubt....

*Butler*, 173 A.3d at 1216-17 (citations omitted).

The Court than reasoned that because *Apprendi* and *Allyene* apply to all types of punishment not just imprisonment (citing *S. Union Co v. United States*, 567 U.S. 343, 346-360 (2012)) and that SORNA registrations requirements are punishment, "the facts leading to registration requirements need to be found by the fact-finder chosen by the defendant, be it a judge or a jury, beyond a reasonable doubt." *Butler*, 173 A.3d at 1217 (citation omitted). Thus, the clear and convincing evidence standard required by §9799.24(e)(3) of SORNA for determining if a defendant is a sexually violent predator is unconstitutional. *Id*. at 1218.

In the case of *In re H.R.*, 196 A.3d 1059 (Pa.Super. 2018), the Northampton County Solicitor petitioned the Court for involuntary treatment of *H.R.* pursuant to §6403 of Act 21. After hearing the evidence, the Court granted the petition and involuntarily committed *H.R.* for one year of mental health treatment. On appeal *H.R.* raised the issue "Is Act 21 punitive, such that its retroactive application.... and its mechanism for determining whether an individual is a sexually violent

12

delinquent child [SVDC] are unconstitutional" under the cases of Muniz and Butler? Id. at 1062.

In addressing this question, the Court first concluded that Act 21 is not punitive in either intent or effect citing In re S.A., supra. Thus, "... because Act 21 is not penal, the clear and convincing evidence standard for determining whether a juvenile is an SVDC is constitutional." Id. at 1063. The Court distinguished both Muniz and Butler because each case dealt with SORNA and not Act 21 and each case found SORNA to be punitive in effect while Act 21 is not. Id. at 1063-64. Therefore, these cases do not render the clear and convincing standard as applied to Act 21 cases unconstitutional. Although H.R. arose from an initial finding that the Appellant was an SVDC pursuant to §6403 we find no reason why the Superior Court's holding would not likewise apply to a hearing under §6404 where the issues are substantially the same.

We note that In re H.R. is presently on appeal to the Pennsylvania Supreme Court. The Court has held argument and as of the time of this writing no decision has been made. Until the Supreme Court has ruled, we are bound by the Superior Court's holding set forth in In re H.R.

Therefore, the clear and convincing evidence standard we applied in B.A.N.'s case is constitutional.

Next, B.A.N. contends that the indefiniteness of Act 21's involuntary commitment is cruel and unusual punishment in violation of the Eighth Amendment of the United States

13

Constitution and Art.I Section 13 of the Pennsylvania Constitution.

The Eighth Amendment of the United States Constitution is applicable to the states through the due process clause of the Fourteenth Amendment and the Pennsylvania Constitution's probition against cruel and unusual punishment is co-extensive with the Eighth and Fourteenth Amendments of the United States Constitution. Commonwealth v. Olds, 192 A.3d 1188, 1190 n.3 (Pa.Super. 2018).

> The Eighth Amendment applies only after the state "has secured a formal adjudication of guilt" because, prior to that time, it has not acquired "the power to punish with which the Eighth Amendment is concerned". Tri Thanah Nguyen v. Franklin Cnty. Sheriff's Dep't., 512 Fed. Appx. 188, 190 (3d Cir. 2013) cert. denied,-U.S.-, 133 S.Ct. 2774, 186 L.Ed.2d 224 (2013) quoting, Ingraham v. Wright, 430 U.S. 651, 671 n. 40, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Once convicted, the Eighth Amendment then imposes a duty on prison officials to provide "humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Imhoff v. Temas, 67 F.Supp. 3d 700, 708-09 (W.D.Pa. 2014).

As discussed above, Act 21 is not punitive. An Act 21 hearing determines whether or not a person meets the statutory criteria for involuntary commitment. No punishment is imposed by the Court. Instead, Act 21 "establishes rights and procedures for the civil commitment of sexually violent delinquent children...and further provides for additional periods of commitment for involuntary treatment for said persons." 42 Pa.C.S.A. §6401. Because Act 21 is civil in nature it does not entail "a formal adjudication of guilt" Imhoff, supra and does

14

not violate B.A.N.'s right to be free from cruel and unusual punishment.

Although the Eighth Amendment applies only to criminal cases, we acknowledge that in Pennsylvania its "principle" can also be applied to civil cases.

> [T]he Pennsylvania Supreme Court has held that the principle embodied in the constitutional limitation against cruel and unusual punishment is applicable to all proceedings. Scranton City v. Peoples coal Co., 274 Pa 63, 117 A.673 (1922). Although the cruel and unusual punishment "principle" applies to all proceedings, its application in civil cases "occurs only when the issue to be determined is whether an abuse of discretion has taken place." Dragowski v. Commonwealth, 94 Pa Cmwlth. 205, 503 A.2d 104, 106 (1986).

Gombach v. Dept. of State, 692 A.2d 1127, 1131 (Pa Cmwlth. 1997)

As seen from the above discussion of B.A.N.'s first issue, the Court only committed him to Torrance after a hearing at which the county proved by clear and convincing evidence that B.A.N. continues to have serious difficulty controlling sexually violent behavior while committed to in-patient treatment due to mental abnormality or personality disorder that makes him likely to engage in an act of sexual violence. He is only committed for a period of one year; he is not committed indefinitely. Committal only occurs after notice and a hearing when B.A.N. is represented by counsel. Therefore, we have not abused our discretion and the "principle" of cruel and unusual punishment has not been violated in this case.

Finally, B.A.N. argues that Act 21 violates the Equal Protection Clauses of the United States and Pennsylvania Constitutions in three ways: Act 21 treats juveniles more

harshly than adults who meet similar criteria under SORNA's sexually violent predator designation; that under SORNA, a person found to be a sexually violent predator is only required to attend outpatient treatment; and that under Act 21, a juvenile who meets the statutory criteria is required to be committed to inpatient treatment and the commitment could last a lifetime.

We begin by setting forth the frame of analysis that must be applied to cases where the equal protection clause is involved.

> We have stated that in analyzing equal protection claims made under the Pennsylvania Constitution, we will use the standards the United States Supreme Court uses when analyzing equal protection claims made under the Fourteenth Amendment of the United States Constitution. Fischer [v. Department of Pub. Welfare,] 502 A.2d [114,][] 121 [Pa. 1985]. In Commonwealth v. Albert, 563 Pa 133, 758 A.2d 1149 (2000), we noted that the essence of the equal protection doctrine is that "'like persons in like circumstances will be treated similarly [,]'" but recognized that the right to equal protection "'does not absolutely prohibit the Commonwealth from classifying individuals for the purposes of receiving equal treatment [.]'" Id. at 1151 (citations omitted).

> The legal framework for evaluating an equal protection challenge made to a particular statutory classification consists of three different types of classifications, each of which calls for its own standard of review. Fischer, 502 A.2d at 121. We have described this framework as follows:

>> The types of classifications are: (1) classifications which implicate a "suspect" class or a fundamental right; (2) classifications implicating an "important" though not fundamental right or a "sensitive" classification; and (3) classifications which involve none of these. Should the statutory classification in question fall into the first category, the statute is strictly construed in light of a "compelling" governmental purpose; if the classification

16

falls into the second category, a heightened standard of scrutiny is applied to an "important" governmental purpose; and if the statutory scheme falls into the third category, the statue is upheld if there is any rational basis for the classification.

Albert, 758 A.2d at 1152 (citation omitted).

Probst v. Com. Dept. of Transp., Bureau of Driver Licensing, 849 A.2d 1135, 1143-44. (Pa. 2004).

In his Concise Statement Errors Complained of on Appeal, B.A.N. does not state which classification Act 21 falls under. However, his arguments that Act 21 violates the Equal Protection Clause by treating juveniles more harshly than adults who meet similar criteria under SORNA's sexually violent predator designation, and by involuntary committing persons for in-patient treatment whereas those found to be an SVP under SORNA are only required to attend outpatient treatment have been addressed in In re K.A.P., Jr., 916 A.2d 1152 (Pa.Super. 2007).

The juvenile in K.A.P., Jr. argued that the "rational basis" test applies to Act 21 and that Chapter 64 lacked any rational basis for treating juvenile offenders differently from similarly-situated at the adult offenders. He argued, inter alia, that chapter 64 treats juvenile sex offenders more harshly than Megan's Law 42 Pa.C.S.A. §9791 et seq. (expired December 20, 2012 pursuant to 42 Pa.C.S.A. §9799.41) treats similar adult offenders, specifically that juvenile offenders are subject to involuntary civil commitment, while adult offenders under Megan's Law are subject "only" to notification and registration provisions.

17

The Superior Court found a rational basis for this distinction.

> First, we note that the statute seeks to promote a legitimate public value. As Appellant himself notes, juveniles ordinarily leave the jurisdiction of the juvenile court system when they reach age 21. See 42 Pa.C.S.A. §6302. In passing chapter 64, the Legislature foresaw that some of these juveniles were sexual offenders (and potential re-offenders) in need of treatment for their own benefit and for the protection of the public. The Legislature provided a program of involuntary civil commitment to serve those needs. In the absence of such a program, these offenders would presumably be released outright once they reached age 21.

> [W]e note that the age distinctions in Chapter 64 are rationally related to that legitimate goal. While a similar program of civil commitment does not exist for adult offenders under Megan's Law, Appellant fails to recognize that adult sexual offenders usually serve a term of imprisonment before they are released. Adult offenders may also be subject to probation thereafter. Thus, the criminal justice system already exists to protect the public from adult offenders. We also note that state prisons may provide mental health services to sex offenders. Even if prisons do not provide such services, the Legislature may reasonably believe that juveniles are more amenable to treatment than adult offenders. Because we can see a rational basis for the distinctions between chapter 64 and Megan's Law, Appellant's equal protection claim fails.

Id. at 1162 (footnote omitted).

Although SORNA replaced Megan's Law, we think the issues raised by B.A.N. comparing Act 21 to SORNA are substantially similar to those decided in In re K.A.P. (comparing Act 21 to Megan's Law). Therefore, B.A.N.'s argument fails.

B.A.N.'s last equal protection argument, that under Act 21 a juvenile who meets the statutory criteria is required to be committed to inpatient treatment and the commitment could last a

18

lifetime, has also been decided in favor of Act 21's constitutionality.

First, the commitment to treatment of a juvenile who meets the statutory criteria has been dealt with in In re K.A.P., supra and does not violate the equal protection clause. There remains the issue of the duration of that commitment. The Superior Court in the case of In re S.A., supra was faced with the argument that Act 21 violated the equal protection clause because it implicates a juvenile's right to physical freedom. The Court agreed that the juvenile's right to physical freedom was implicated and proceeded to inquire if the Commonwealth had a compelling state interest addressed by the application of Act 21.

> [Section] 6401 evidences a desire by the General Assembly to establish civil commitment procedures designed to provide necessary treatment to sexually violent delinquent children and to protect the public from danger. It is undisputed that the Commonwealth has a compelling interest in protecting its citizens from danger. Thus, we find that chapter 64 promotes a compelling state interest.
>
> As to the final consideration in regard to equal protection, particularly in light of inherent provisions contained in Act 21 for annual review, which serve as a means to guard against excessive commitment of a juvenile, we find that Act 21 is narrowly tailored to effectuate the state's interest in protecting the public. Consequently, we conclude that Appellant's claim that Act 21 violates principles of equal protection is without merit.

In re S.A., 925 A.2d at 847 (citations omitted).

B.A.N. has had a hearing pursuant to section 6404 of Act 21 every year following his initial commitment to Torrance State Hospital. Each time the Court involuntarily committed to Torrance for an additional one year period based upon the County

19

proving by clear and convincing evidence that B.A.N.'s case meets the statutory criteria. Act 21 does not commit B.A.N. to a mental health facility for the rest of his life. He will remain at Torrance only so long as he displays serious deficiencies in controlling his sexually violent behavior.

Therefore, for the reasons set forth above, Act 21 does not violate the Equal Protection Clauses of the United States and Pennsylvania Constitutions.

Respectfully submitted,

_____
Scott E. Lash, J.

RECEIVED
PROTHONOTARY'S OFFICE
2020 MAR 24 A 8: 50
BERKS COUNTY, PA

NOTICE IS HEREBY GIVEN OF THE ENTRY OF THIS ORDER OR DECREE PURSUANT TO RULE P.C.P. 236 YOU ARE NOTIFIED THAT THIS ORDER/DOCUMENT HAS BEEN FILED IN THE PROTHONOTARY'S OFFICE OF BERKS COUNTY AND THIS IS AN EXTRACT FROM THE RECORD OF SAID COURT CERTIFIED THIS
24 DAY OF MAR 2020
Jonathan K. Del Collo, Prothonotary
Fitzgerald Ch. Deputy