849 A.2d 1135

**Franklin E. PROBST, Appellee**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Supreme Court of Pennsylvania.

Argued May 15, 2002.

Decided May 26, 2004.

44

Harold Cramer, Andrew S. Gordon, Timothy Peter Wile, Harrisburg, James M. Sheehan, Philadelphia, for Bureau of Driver Licensing.

Craig Philip Miller, Lock Haven, for Franklin Probst.

Before ZAPPALA, C.J., CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN, JJ.

## *OPINION*

Chief Justice CAPPY.

This is a direct appeal brought under 42 Pa.C.S. § 722(7) from the order of the Court of Common Pleas of Clinton County, sustaining Appellee's statutory appeal and ordering the appellant, the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing ("Penn-DOT" or the "Department"), to restore Appellee's operating privileges following a one year suspension for driving under the influence of alcohol ("DUI") whether or not he complies with Act 63 of 2000 ("Act 63" or the "Act"), 42 Pa.C.S. §§ 7001–7003, and installs an approved interlock ignition system on each of the motor vehicles he owns.[1] The bases for the trial court's order were two-fold: first, that Act 63 was unconstitutional under the separation of powers and equal

---

1. The General Assembly repealed Act 63 by 2003, Sept. 30, P.L. 120, No.24, § 4, effective Feb. 1, 2004. The definition of an ignition interlock system in Act 63, formerly set forth in 42 Pa.S.C. § 7001, is now in 75 Pa.C.S. § 3801. The provisions in Act 63 requiring the installation of the ignition interlock system on the vehicles of certain DUI offenders and providing for certain additional drivers' license restoration requirements formerly set forth in 42 Pa.C.S. §§ 7002 and 7003, are now in 75 Pa.C.S. § 3805.

Nevertheless, to dispose of the issues raised in this case, by necessity, we refer to Act 63.

protection doctrines; and second, that given the circumstances of Appellee's guilty plea, PennDOT's imposition of Act 63's requirements upon him violated fundamental fairness and due process. For the following reasons, we affirm the trial court's order declaring that Act 63 was unconstitutional in violation of separation of powers; we reverse the trial court's order declaring that Act 63 was unconstitutional in violation of equal protection; and we transfer PennDOT's appeal to the Commonwealth Court for disposition of the trial court's determination that fundamental fairness and due process preclude PennDOT from imposing Act 63's requirements upon Appellee.

Act 63 contained the legislative requirement that a serial DUI offender who is eligible to have his operating privileges restored after 75 Pa.C.S. § 1532(b)(3)'s mandatory one year suspension can do so if he secures a license that restricts him to operating motor vehicles that are equipped with an approved ignition interlock system. *See* now repealed 42 Pa.C.S. § 7003(2). Act 63 defined an "ignition interlock system" as: "A system approved by the department that prevents a vehicle from being started or operated unless the operator first provides a breath sample indicating that the operator has an alcohol level less than 0.025%." *See* now repealed 42 Pa.C.S. § 7001. The Act further stated that a serial DUI offender "who does not apply for an ignition interlock restricted license shall not be eligible to apply for the restoration of operating privileges for an additional year." *See* now repealed 42 Pa. C.S. § 7003(5).

In this case, Appellee was arrested for DUI and charged with violating 75 Pa.C.S. § 3731(a)(4)(i) [2] on August 5, 2000. This was Appellee's fifth DUI offense. On October 25, 2001, Appellee appeared before the court of common pleas and pled guilty. At that proceeding, the Commonwealth stated that Act 63 applies only in cases in which both the offense and conviction occurred after the Act's September 30, 2000 effective date. Accordingly, the court sentenced Appellee to a

**2.** The General Assembly repealed this statute by 2003 Sept. 30, P.L. 120, § 14, effective Feb. 1, 2004. The DUI statute is now in 75 Pa.C.S. § 3802.

term of imprisonment and required him to pay a fine, the costs of prosecution and a surcharge. But because Appellee's offense occurred before Act 63's effective date, the court expressly declined to order the installation of an approved ignition interlock system on each of Appellee's vehicles upon PennDOT's restoration of his operating privileges, as Act 63 then required. *See* now repealed 42 Pa.C.S. § 7002(b).[3]

On November 1, 2000, the Clinton County Clerk of Courts certified Appellee's October 25, 2001 DUI conviction to Penn-DOT. PennDOT then sent a notice ("Notice") to Appellee, which stated in relevant part:

> This is an Official Notice of the Suspension of Your Driving Privilege as authorized by Section 1532B of the Pennsylvania Vehicle Code. As a result of your 10/25/2000 conviction of violating Section 3731 of the Vehicle Code DRIVING UNDER INFLUENCE on 8/05/2000:

> As a result of your conviction for driving under the influence, you are required by law to have all vehicle(s) owned by you equipped with an approved ignition interlock system before your driving privileges can be restored. If you fail to comply with this requirement, your driving privilege will remain suspended for an additional year. You will receive more information regarding this requirement approximately 30 days before your eligibility date.

> Your driving privilege is SUSPENDED for a period of 1 year(s) effective 11/07/2001 at 12:01 a.m.

\* \* \*

*APPEAL*

> You have the right to appeal this action to the Court of Common Pleas (Civil Division) within 30 days of the mail date. . . .

---

**3.** In *Commonwealth v. Mockaitis v.* 575 Pa. 5, 834 A.2d 488 (2003), we determined that 42 Pa.C.S. § 7002(b) and § 7003(1), which required the sentencing court to order and certify the installation of the interlock ignition system on a serial DUI offender's motor vehicles, were unconstitutional, and severed them from Act 63. 834 A.2d at 502.

Remember this is an OFFICIAL NOTICE OF SUSPEN-SION.

(R. 7a).

Appellee filed a petition for appeal in the court of common pleas, alleging that the Act's ignition interlock system requirement was unconstitutional under the United States Constitution and the Pennsylvania Constitution; that the Act did not authorize PennDOT to impose the ignition interlock system requirement; that compliance with the Act's requirement was not possible inasmuch as PennDOT had not yet approved of any particular ignition interlock system; and that the trial court had ruled at his sentencing that he would not be subject to the Act's requirements.

PennDOT filed a Motion to Quash Appeal, alleging that the court of common pleas did not have jurisdiction because the action PennDOT took—requiring Appellee to equip his vehicles with an ignition interlock system before his operating privileges are restored—is not one of the matters that may be appealed in the court of common pleas under 75 Pa.C.S. § 1550(a). The common pleas court denied PennDOT's Motion, observing, in part, that Appellee was appealing PennDOT's action of suspending his operating privileges for a second year.

Following a *de novo* hearing, the court issued an order dated February 16, 2001, in which it ruled that Act 63 was unconstitutional. Specifically, the court stated that the Act violated the guarantee of equal protection, inasmuch as the cost of compliance is so significant that a substantial portion of the public will be unable to comply, and violated the separation of powers doctrine in that it involved the court in certifying installation of the ignition interlock system. The court also held that an order compelling Appellee to satisfy the Act's requirements would violate fundamental fairness and due process inasmuch as he entered his plea based on an understanding that those requirements would not be imposed upon him. Accordingly, the court ordered that PennDOT restore Appellee's operating privileges on November 7, 2002, whether or not

there was an ignition interlock system on each of his vehicles.[4] PennDOT's appeal followed.[5]

As a preliminary matter, we note that presently, PennDOT raises two questions that are ancillary to the question that is within the mandate of our jurisdiction under 42 Pa.C.S. § 722(7).[6] That is, in addition to raising whether the court of common pleas correctly held that Act 63 was unconstitutional, PennDOT raises whether the court of common pleas had jurisdiction and whether the court of common pleas correctly ruled that imposing the Act's requirements upon Appellee would violate due process in light of the circumstances in which he entered his guilty plea.

We also note that PennDOT did not comply with our instructions in *Harrington v. Commonwealth*, 563 Pa. 565, 763 A.2d 386 (2000), and develop reasons as to why this court should specially consider these ancillary issues.[7] Ordinarily,

4. The trial court did not address the general allegations in Appellee's petition for appeal regarding PennDOT's lack of statutory authority in Act 63 to impose installation of the ignition interlock system or PennDOT's failure at the time to provide regulatory guidance.

5. The issues we address in this appeal raise questions of law. Accordingly, our standard of review is *de novo* and to the extent necessary, the scope of our review is plenary as this court may review the entire record in making its decision. *See Buffalo Township v. Jones*, 571 Pa. 637, 813 2d 659, 644 n. 4 (2002).

6. Section 722(7) of the Judicial Code, our jurisdictional grant in this case, states in relevant part:

§ 722. Direct appeals from courts of common pleas
The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases:

\* \* \*

(7) Matters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or of any statute of, this Commonwealth, or any provision of any home rule charter.
42 Pa.C.S § 722(7).

7. *Harrington* was a direct appeal under 42 Pa.C.S. § 722(7), in which we considered a common pleas court's declaration that an amendment to Section 1584 of the Vehicle Code, 75 Pa.C.S. § 1584, was unconstitutional. Observing that the parties in a number of direct appeals in other related cases had raised issues that were not presented in terms of

as *Harrington* teaches, such a default would result in our declining to address these issues. *Id.* at 393. As to the question of the common pleas court's subject matter jurisdiction, however, we will not take the *Harrington* approach; but rather, will decide it. The answer to the question of the lower court's jurisdiction is a threshold matter, and essential to our determining whether we will move to the merits in this case or whether we will simply vacate the lower court's order as void and quash the appeal. *See McCutcheon v. Philadelphia Elec. Co.*, 567 Pa. 470, 788 A.2d 345, 350 (2002) (reiterating the longstanding rule that an adjudication of a court that does not have jurisdiction is void and without legal effect).

PennDOT's argument on jurisdiction has two parts. First, PennDOT contends that the common pleas court lacked subject matter jurisdiction because the action it took against Appellee—the imposition of a restoration of operating privilege requirement—is not one of the six departmental actions that 75 Pa.C.S. § 1550(a) authorizes for immediate judicial review. In other words, because Appellee did not challenge the denial or cancellation of his driver's license or the recall, suspension, revocation or disqualification of his operating privileges, 75 Pa.C.S. § 1550(a)'s jurisdictional grant was not met.[8]

the amendment's constitutionality, we applied sound jurisprudential principles, which warrant selectivity in the determination of issues that are not within the scope of our essential mandate in a direct appeal under Section 722(7), and instructed that:

henceforth to the extent that litigants seek review of ancillary and/or previously undecided issues in a direct appeal pursuant to Section 722(7), they are directed to develop reasons why such issues should be specially considered, along the lines of the guidelines stated in Pennsylvania Rules of Appellate Procedure 1114. In the absence of such reasons, the general practice of the Court will be to remand to the court of common pleas, or, where appropriate, transfer to the appropriate intermediate appellate court, for consideration of ancillary or unresolved issues.

763 A.2d at 393 (citation omitted).

8. The Vehicle Code states in relevant part:

§ 1550. Judicial review

(a) General rule.—Any person who has been denied a driver's license, whose driver's license has been canceled or whose operating privilege has been recalled, suspended, revoked or disqualified by the department shall have the right to appeal to the court vested with

We disagree. As we have stated, " '[j]urisdiction relates solely to the competency of the particular . court or administrative body to determine controversies of the general class to which the case then presented for its consideration belongs.....' " *Mockaitis,* 834 A.2d at 495 (quoting *Riedel v. Human Relations Comm'n of Reading,* 559 Pa. 34, 739 A.2d 121, 124 (1999)). Applying this principle, Appellees case falls squarely within the general class of controversies that 75 Pa.C.S. § 1550(a) directs the court vested with jurisdiction under the Judicial Code to review.[9] PennDOT's Notice to Appellee does not only provide for a restoration of operating privilege requirement. Rather, the Notice also provides for a second year suspension of Appellee's operating privilege under Act 63. This latter action of suspension, which Appellee challenged, is one of the determinations that the General Assembly has committed to a court's appellate jurisdiction under 75 Pa.C.S. § 1550(a). Therefore, we conclude that the court of common pleas had subject matter jurisdiction over Appellee's appeal.

PennDOT's second argument on jurisdiction is based on the terms of 42 Pa.C.S. § 933(a), which gives jurisdiction to the courts of common pleas from appeals of "final orders" with regard to the matters listed in 75 Pa.C.S. § 1550(a).[10] Penn-

jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure)....
75 Pa.C.S. § 1550(a).

**9.** Under 42 Pa.C.S. § 933(a)(1)(ii), the court with jurisdiction is the court of common pleas. *See supra,* n. 10.

**10.** The Judicial Code states in pertinent part:
§ 933. Appeals from government agencies
(a) General rule.—Except as otherwise prescribed by any general rule adopted pursuant to section 503 (relating to reassignment of matters), each court of common pleas shall have jurisdiction of appeals from final orders of government agencies in the following cases:
(1) Appeals from Commonwealth agencies in the following cases:
(ii) Determinations of the Department of Transportation appealable under the following provisions of Title 75 (relating to vehicles):
\* \* \*
Section 1550 (relating to judicial review)....
42 Pa.C.S. § 933(a)(1)(ii).

DOT claims that the Notice it sent Appellee is not a "final order" from which he could appeal because under its terms, he must comply with the ignition interlock system requirement only when he seeks restoration from 75 Pa.C.S. § 1532(b)(3)'s mandatory one-year suspension.[11]

We begin our discussion of this issue with the observation that the term "final order" is not defined in 42 Pa.C.S. § 933 nor clarified in a rule. We find guidance, however, in certain principles that have traditionally assisted us in determining when an order is final and may be appealed. As we have stated, "[i]n ascertaining what is a final order, we have looked beyond the technical effect of the adjudication to its practical ramifications[,]" and have defined a final order as one that "ends the litigation" or "disposes of the entire case" or "effectively puts the litigant 'out of court.'" *T.C.R. Realty, Inc. v. Cox*, 472 Pa. 331, 372 A.2d 721, 724 (1977) (citations omitted).

With these principles in mind, we find that PennDOT's argument, which again focuses on the restoration of Appellee's operating privileges, misses the mark. As noted, the Notice does not merely advise Appellee of a requirement for operating privileges restoration. Rather, the Notice also suspends Appellee's operating privileges. Moreover, the suspension that the Notice effects is for two years—for one year under 75 Pa.C.S. § 1532(b) and for an additional year under Act 63. That the Notice holds out the possibility that PennDOT may restore Appellee's operating privileges and lift the additional year of suspension should he equip his vehicles with an ignition interlock system does not alter the fact that the Notice constitutes PennDOT's last word and definitive decision on suspension. In this regard, therefore, the Notice has the earmarks of a final order for purposes of appeal. Accordingly, we conclude that the Notice is a final order within the meaning of 42 Pa.C.S. § 933(a), which gave the court of common pleas jurisdiction.

11. PennDOT did not raise this particular issue in the trial court. However, the question of the appealability of an order goes to the court's jurisdiction and may be raised at any time. *See Fried v. Fried*, 509 Pa. 89, 501 A.2d 211, 212 (1985).

■ We turn now to the questions that lie within our jurisdictional grant under 42 Pa.S.C. § 722(7). As the common pleas court's determination that the delegation of certain responsibilities to the courts in Act 63 violated the separation of powers doctrine mirrors our holding in *Mockaitis*, we hold that the common pleas court correctly declared that Act 63 was unconstitutional in certain provisions on that basis. *See Mockaitis*, 834 A.2d at 488.

Next, we consider the trial court's determination that Act 63 was unconstitutional because it offended equal protection.[12] At the hearing on Appellee's petition for appeal, in support of his equal protection claim, Appellee testified that he was unable to pay for the cost of installing an ignition interlock system on the one motor vehicle he owned. Accepting Appellee's testimony and taking judicial notice of the fact that PennDOT had advised certain judges that the cost of installing an ignition interlock system was at least $1,000,[13] the trial court stated in its Order: "[Act 63] is violative of an operator's right to equal protection because the cost of compliance is so significant that that [sic] a substantial portion of the public will be unable to comply. In essence, the rich will install the system and maintain their operating privileges, while the poor will not." (Trial Court Order at 2).[14]

12. In *Mockaitis*, consistent with a long-standing principle of constitutional jurisprudence, we noted that an equal protection challenge against Act 63 may be made by a serial DUI offender who can assert that he himself has been affected by the defect that he claims makes the statute unconstitutional. *Mockaitis*, 834 A.2d at 503. *See Booz v. Reed*, 398 Pa. 172, 157 A.2d 170, 172 (1960). Appellee satisfied this requirement. *See infra* pp. 10–11.

. In *Mockaitis*, we also anticipated that equal protection challenges to Act 63 would arise in a restoration of operating privileges context, and accordingly, would be pursued in an administrative setting. *Id.* As we have seen, Appellee's equal protection challenge arose in a suspension of operating privileges context, and was, therefore, properly pursued in the trial court.

13. In this appeal, PennDOT voiced no objection to the trial court's use of judicial notice or to the dollar figure the trial court accepted as fact.

14. In his Brief, on the issue of equal protection, Appellee cited to the Fourteenth Amendment of the United States Constitution, which pro-

■ In other words, the trial court concluded that Act 63 draws an unlawful distinction between the "rich" and the "poor." The class the trial court designated as the "rich" was made up of those DUI offenders who would be able to pay for installation of the ignition interlock system on their vehicle (or vehicles), and the class it designated as the "poor" were those DUI offenders who would not be able to afford to make such payments. Thus, while the "rich" would be able to apply to PennDOT to take advantage of the Act's opportunity to operate a vehicle after the mandatory one-year suspension, the "poor" would not be able to make such an application and would have their operating privileges suspended for an additional year.[15]

vides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST amend. XIV, § 1.

Appellee also cited to Article 1, Section 1 and Article 1, Section 26 of the Pennsylvania Constitution. The only state equal protection claim that Appellant developed and the only state equal protection claim that the trial court decided was one that focused on the assertion that Act 63 unlawfully divides DUI offenders into certain classes. This equal protection claim is associated with Article 1, Section 1, which provides that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property and reputation, and of pursuing their own happiness." PA. CONST art. 1, § 1. See Fischer v. Department of Pub. Welfare, 509 Pa. 293, 502 A.2d 114, 121 (1985).

Article 1, Section 26, which provides that "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right[,]" PA. CONST. art. 1, § 26, is associated with an equal protection claim that focuses on the assertion that a person has been penalized for the exercise of a constitutional freedom. See Fischer, 502 A.2d at 123–24. Appellee made no attempt to develop an Article 1, Section 26 equal protection challenge, nor did the trial court's Order reflect an Article 1, Section 26 analysis. Therefore, Article 1, Section 26 is not implicated in this case.

15. The financial inability to pay a fee or cost under a statutory scheme has been a defining characteristic of an allegedly unlawful classification in equal protection cases. See, e.g., Kadrmas v. Dickinson Public Schools, 487 U.S. 450, 108 S.Ct. 2481, 101 L.Ed.2d 399 (1988); United States v. Kras, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973). See also San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 19–21, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973).

Before we consider the trial court's determination further, a discussion of the principles that will guide us is in order. We have stated that in analyzing equal protection claims made under the Pennsylvania Constitution, we will use the standards the United States Supreme Court uses when analyzing equal protection claims made under the Fourteenth Amendment of the United States Constitution. *Fischer*, 502 A.2d at 121. In *Commonwealth v. Albert*, 563 Pa. 133, 758 A.2d 1149 (2000), we noted that the essence of the equal protection doctrine is that " 'like persons in like circumstances will be treated similarly[,]' " but recognized that the right to equal protection " 'does not absolutely prohibit the Commonwealth from classifying individuals for the purposes of receiving equal treatment[.]' " *Id.* at 1151 (citations omitted).

The legal framework for evaluating an equal protection challenge made to a particular statutory classification consists of three different types of classifications, each of which calls for its own standard of review. *Fischer*, 502 A.2d at 121. We have described this framework as follows:

The types of classifications are: (1) classifications which implicate a "suspect" class or a fundamental right; (2) classifications implicating an "important" though not fundamental right or a "sensitive" classification; and (3) classifications which involve none of these. Should the statutory classification in question fall into the first category, the statute is strictly construed in light of a "compelling" governmental purpose; if the classification falls into the second category, a heightened standard of scrutiny is applied to an "important" governmental purpose; and if the statutory scheme falls into the third category, the statute is upheld if there is any rational basis for the classification.

*Albert*, 758 A.2d at 1152 (citations omitted).

Applying this framework to the classification between the "rich" and the "poor" that the trial court determined Act 63 creates, we conclude that it does not implicate a suspect or sensitive classification nor does it impact upon a fundamental or important interest. Like the United States Supreme

Court, this court has rejected the proposition that financial need alone identifies a suspect class or that statutes that have a different effect on the rich and poor should on that basis alone come under strict scrutiny. *See Kadrmas,* 487 U.S. at 458, 108 S.Ct. 2481; *Fischer,* 502 A.2d at 121–22. Moreover, this court has concluded that the suspension of operating privileges associated with a DUI conviction is a collateral civil consequence of the conviction, *Commonwealth v. McCafferty,* 563 Pa. 146, 758 A.2d 1155, 1162 (2000), and has repeatedly stated that operating a vehicle is a privilege, not a right. *See, e.g., Commonwealth v. Yarger,* 538 Pa. 329, 648 A.2d 529, 531 (1994). Therefore, the rational basis test is the equal protection standard against which Act 63 is to be measured.

In applying the rational basis test, we have adopted a two-step analysis. First, we determine whether the challenged statute seeks to promote any legitimate interest or public value. If so, we then determine whether the classification adopted in the legislation is reasonably related to accomplishing that articulated state interest or interests. *Albert,* 758 A.2d at 1152. In undertaking this analysis, we are free to hypothesize reasons the legislature might have had for the classification, and will not declare a genuine classification void even if we might question the soundness or wisdom of the distinction. *Id.* Furthermore, we keep in mind that because a presumption of constitutionality attaches to any lawfully enacted legislation, the burden is upon the party attacking a statute to rebut the presumption of constitutionality by a clear, palpable, and plain demonstration that the rational basis test is not met. *See James v. Southeastern Pennsylvania Transportation Authority,* 505 Pa. 137, 477 A.2d 1302, 1304 (1984).

Guided by these principles, we have no hesitation in concluding that the classification in Act 63 presently at issue has a rational basis. As PennDOT points out, Act 63 promotes the Commonwealth's recognized legitimate interest in highway safety and its interest in protecting its citizens from the dangers of drunk driving. *See Commonwealth v. Kohl,* 532 Pa. 152, 615 A.2d 308, 316 (1992). The ignition interlock

system, which Act 63 requires, is a device that serves a prophylactic purpose, by ensuring that a motor vehicle cannot be operated by a person who is under the influence of alcohol. In enacting Act 63, the General Assembly could have reasonably concluded that the Commonwealth's interest in shielding its citizens from the hazards that intoxicated drivers pose would be furthered by denying the privilege of driving for an additional year to those recidivist DUI offenders who cannot pay to install such a device on their respective vehicles. Accordingly, we hold that the trial court erred in ruling that Act 63 violates the equal protection provisions of the Pennsylvania and United States Constitutions.

Finally, in light of PennDOT's failure to follow *Harrington* and develop reasons as to why we should specially consider its ancillary question regarding the trial court's determination that given the circumstances of Appellee's guilty plea, fundamental fairness and due process preclude PennDOT's imposition of Act 63's requirements upon him, and because we can discern no reason to consider the issue, we will not address it, but will transfer this appeal to the appropriate intermediate appellate court to dispose of it. *See Harrington*, 763 A.2d at 393.

Accordingly, we affirm that part of the trial court's order declaring that Act 63 was unconstitutional for violating the separation of powers doctrine; we reverse that part of the trial court's order declaring that Act 63 was unconstitutional for violating equal protection; and we transfer the present appeal to the Commonwealth Court[16] for disposition of the issue PennDOT raised regarding the trial court's determination that given the circumstances of Appellee's guilty plea, fundamental fairness and due process preclude PennDOT from imposing Act 63's requirements upon him.

Former Chief Justice ZAPPALA did not participate in the decision of this case.

16. Under 42 Pa.C.S. § 762(a)(3), the Commonwealth Court has jurisdiction over Penn-DOT's appeal.