IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neal Duiker,                           :
                     Petitioner        :
                                       :
        v.                             : No.  1481 C.D. 2021
                                       : Submitted:  November 4, 2022
Pennsylvania State Police              :
(Office of Open Records),              :
                     Respondent        :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE                              FILED: March 9, 2023


        Neal Duiker (Duiker), pro se, petitions for review of the November 15, 2021,

final determination of the Pennsylvania Office of Open Records (OOR) that denied

his appeal from the Pennsylvania State Police's (PSP) denial of his request under the

Right-to-Know Law (RTKL).[1]  Duiker argues OOR erred in its determination that

the requested records were exempt from disclosure.  Upon review, we are

constrained to affirm.

## BACKGROUND

        Duiker submitted a RTKL request to PSP seeking "the investigation file for

Lonene Rogers, [(Rogers)] dob 10/18/51." Reproduced Record (R.R.) at 8a.  In his

---

[1] Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104.

request, Duiker explained that Rogers went missing in January 1981 and her last known address was in Meadville, Pennsylvania. *Id.* Duiker specifically sought "all police reports, witness statements, photographs, investigative notes and any other documents relating to [the] case." *Id.*

In response, on September 17, 2021, PSP, by its Deputy Agency Open Records Officer, Lisa M. Ferguson (Agency Officer Ferguson) denied Duiker's request under the RTKL's investigative exemption,[2] personal-identification exemption,[3] victim information exemption,[4] and the Criminal History Record Information Act (CHRIA).[5] R.R. at 9a. In support of the denial, Agency Officer

---

[2] Section 708(b)(16) of the RTKL exempts from disclosure "[a] record of an agency relating to or resulting in a criminal investigation." 65 P.S. § 67.708(b)(16).

[3] Section 708(b)(6)(i)(A) of the RTKL exempts from disclosure records containing "confidential personal identification numbers," including "home, cellular or personal telephone numbers." 65 P.S. § 67.708(b)(6)(i)(A).

[4] Section 708(b)(16)(v) of the RTKL specifically exempts from disclosure "[v]ictim information, including any information that would jeopardize the safety of the victim." 65 P.S. § 67.708(b)(16)(v).

[5] 18 Pa.C.S. §§ 9101–9183. CHRIA prohibits the dissemination of "investigative information" to individuals other than criminal justice agencies. 18 Pa.C.S. § 9106(c)(4). Under CHRIA, a "criminal justice agency" is defined as:

> Any court, including the minor judiciary, with criminal jurisdiction or any other governmental agency, or subunit thereof, created by statute or by the State or Federal constitutions, specifically authorized to perform as its principal function the administration of criminal justice, and which allocates a substantial portion of its annual budget to such function. Criminal justice agencies include, but are not limited to: organized State and municipal police departments, local detention facilities, county, regional and State correctional facilities, probation agencies, district or prosecuting attorneys, parole boards, pardon boards, the facilities and administrative offices of the Department of Public Welfare that provide care, guidance and control to adjudicated delinquents, and such agencies or subunits thereof, as are declared by the Attorney General to be criminal justice agencies as

**(Footnote continued on next page…)**

2

Ferguson verified she searched through PSP records and found the following responsive PSP record: PSP Initial Crime Report No. E5-201075 (Criminal Incident Report). *Id*. at 11a. Agency Officer Ferguson indicated that she personally examined the Criminal Incident Report and its supporting attachments, including "witness statements, photographs, and investigative notes" and "found it to be manifestly related to a criminal investigation." *Id*. She stated the Criminal Incident Report is a "multiple page record assembled by Trooper John Marin on or after January 7, 1981, as a result of an investigation into a criminal incident or an allegation of criminal wrongdoing." *Id*.

Duiker appealed PSP's response denying the release of the Criminal Incident Report to the OOR. First, Duiker challenged PSP's assertion that the records he requested related to or resulted from a criminal investigation. Specifically, Duiker stated, "the family of [Rogers] believes [PSP] has never formally elevated the disappearance of [Rogers] into a criminal case" and asserts PSP has admitted the case is a "mere missing person case." R.R. at 28a. Duiker went on to indicate that "a quick search of PA criminal codes did not render a criminal statute indicating being a missing person was a crime." *Id*. Therefore, Duiker claimed the RTKL's investigative exemption did not exempt "an investigative file simply because it has the potential of becoming a criminal investigation." *Id*. Similarly, Duiker asserted CHRIA did not apply because "although the investigation included a criminal explanation for her disappearance, it is believed this portion of [PSP's] investigation was a natural branching of their investigation, rather than a formal or informal

---

determined by a review of applicable statutes and the State and Federal Constitutions or both.

18 Pa. C.S. § 9102.

3

inquiry of a criminal incident or allegation of criminal wrongdoing." *Id*. at 29a. Duiker argued "the case never passed the threshold of criminality, rather maintained status as a missing persons case." *Id*. Finally, Duiker argued that because Rogers had been missing for over 40 years, while the investigation remained open, "[PSP's] effort [could] hardly be characterized as ongoing." *Id*. at 30a.

In addition to his basis of appeal, Duiker also submitted various newspaper clippings and screenshots of websites referencing Rogers' disappearance and PSP's investigation, as well as a letter from Allison Duiker, Rogers' daughter. In her letter, Allison Duiker indicates she was five years old at the time of Rogers' disappearance. Allison Duiker maintains the investigation into Rogers' disappearance has never been classified or referred to as "anything other than a 'Missing Person Case.'" R.R. at 32a.

In response to Duiker's appeal, PSP argued the Criminal Incident Report

> is the documented PSP investigation into a complaint of criminal activity or an allegation of criminal wrongdoing and contains investigative information. As can be expected, this responsive record contains personal identifying information, and reflects the findings and conclusions, as well as actions, observations, and notes of investigating troopers. This report is comprised of the initial crime report and supplemental investigative reports or components further detailing the open and ongoing PSP investigation into the January 7, 1981 disappearance of [Rogers].

R.R. at 50a. Additionally, PSP submitted a verification of its Agency Open Records Officer, William A. Rozier, (Agency Officer Rozier) confirming the Criminal Incident Report is "manifestly related to a criminal investigation." R.R. at 53a. Agency Officer Rozier "determined the requested record was created, received or retained pursuant to the documentation of a PSP investigation into a complaint of potential criminal activity concerning a missing person." *Id*. Agency Officer Rozier

4

specified the Criminal Incident Report is a "180-page document compiled by multiple PSP [troopers] concerning [a] PSP investigation into a missing person." *Id.*

On November 15, 2021, OOR issued its Final Determination, which denied Duiker's appeal. R.R. at 62a. OOR concluded that based on the evidence provided, PSP proved the withheld Criminal Incident Report and supporting attachments and documents are related to a criminal investigation and, therefore, exempt under the RTKL. *Id.* at 61a.

Duiker now petitions this Court for review. First, Duiker asserts OOR denied Duiker "due process by failing to address the issue of fact that the investigative file relating to [Rogers] is a criminal investigative file permitting to exemption of RTKL disclosure." Duiker's Br. at 3. Second, Duiker contends OOR erred in its determination that the missing person file of Rogers is a criminal file exempted under the RTKL's investigative exemption under Section 67.708(b)(16). *Id.* at 4. Third, Duiker argues OOR's determination that the Rogers file is exempted under CHRIA is an error. *Id.* Finally, Duiker asserts OOR erred because PSP is being "disingenuous in using 'ongoing investigation' justification as a means to prevent disclosure of the records." *Id.*

In response, PSP argues OOR correctly determined the Criminal Incident Report is exempt from public disclosure under the RTKL. PSP Br. at 7. Specifically, PSP contends the requested records are exempt because they relate to or resulted from a criminal investigation and are therefore exempt from disclosure pursuant to 65 P.S. § 67.708(16). *Id.* PSP contends it met its burden of proving the Criminal Incident Report is not a "public record" under the RTKL through the verifications it submitted, which were properly accepted as true by the OOR. *Id.* at 9.

## DISCUSSION

When reviewing determinations made by appeals officers under the RTKL, our standard of review is de novo, which we have explained is "full consideration of a case at another time." *Passel v. Dep't of Transp., Bureau of Driver Licensing*, 928 A.2d 381, 383 (Pa. Cmwlth. 2007). Our scope of review is plenary. *Bowling v. Off. of Open Recs.*, 75 A.3d 453 (Pa. 2013). In other words, our review includes consideration of the entire record. *Probst v. Dep't. of Transp., Bureau of Driver Licensing*, 849 A.2d 1135, 1139 n.5 (Pa. 2004).

### Due Process

Before reaching the merits, we consider Duiker's due process claim. Duiker argues OOR denied him due process "by failing to address the issue of fact that the investigative file relating to [Rogers] is a criminal investigative file permitting to exemption of RTKL disclosure." Duiker's Br. at 3. While Duiker frames this issue as a denial of due process, Duiker specifically indicates he "**DOES NOT claim an evidentiary hearing or in camera reviews as a matter of due process right**." *Id.* at 13 (emphasis in original). Instead, Duiker argues "OOR blithely accept[ed] the sworn verification of PSP as material fact without any further analysis" and PSP's "verifications [were] conclusory in nature." *Id*. at 10-11.

In the RTKL context, due process requires the parties be provided with notice and an opportunity to present evidence to the fact-finder. *Wishnefsky v. Dep't of Corr.*, 144 A.3d 290, 295 (Pa. Cmwlth. 2016). It is well-established that OOR is not required to hold a hearing. *United Healthcare of Pa., Inc. v. Baron*, 171 A.3d 943, 952 (Pa. Cmwlth. 2017) (citation omitted). Here, Duiker was provided an opportunity to submit evidence and his position statement to OOR, the fact-finder in these proceedings, which he did. He was able to respond to PSP's arguments and

6

develop a record as to his allegations regarding the requested records. Because Duiker identified no flaws in the process before OOR, in which he fully participated, we discern no due process violation. Discerning no due process violation, we turn to the merits of Duiker's arguments.

**The RTKL**

The RTKL requires Commonwealth agencies, like PSP, to provide access to public records upon request. 65 P.S. § 67.301 ("A Commonwealth agency shall provide public records in accordance with this act."). A "public record" is defined under the RTKL as a "record . . . of a Commonwealth or local agency that: (1) is not exempt under section 708; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." 65 P.S. § 67.102. A "record" is further defined as:

> Information, regardless of physical form or characteristics, that documents a transaction or activity of an agency and that is created, received or retained pursuant to law or in connection with a transaction, business or activity of the agency. The term includes a document, paper, letter, map, book, tape, photograph, film or sound recording, information stored or maintained electronically and a data-processed or image-processed document.

*Id.*

Turning to the relevant exemptions, the "burden of proving that a record of a Commonwealth agency…is exempt from public access shall be on the Commonwealth agency…receiving a request by a preponderance of the evidence." 65 P.S. § 67.708(a)(1). An agency can meet its burden of proof through affidavits. *Moore v. Off. of Open Recs.*, 992 A.2d 907, 909 (Pa. Cmwlth. 2010). This Court has approved of OOR's use of testimonial affidavits in rendering decisions, *see Sherry v. Radnor Twp. Sch. Dist.*, 20 A.3d 515, 520 (Pa. Cmwlth. 2011), and has specifically held that the credible testimonial affidavit of a deputy

7

open records officer at PSP is sufficient to support a claimed exemption. *Mitchell v. Off. of Open Recs.*, 997 A.2d 1262 (Pa. Cmwlth. 2010).  We interpret the RTKL's exemptions in a manner consistent with the statute's objective, "which is to empower citizens by affording them access to information concerning the activities of their government." *Pa. State Police v. Grove*, 161 A.3d 877, 892 (Pa. 2017) (quoting *SWB Yankees LLC v. Wintermantel*, 45 A.3d 1029, 1042 (Pa. 2012)).

Relevant to this appeal, the RTKL exempts the following records from disclosure:

A record of an agency relating to or resulting in a criminal investigation, including:

(i) Complaints of potential criminal conduct other than a private criminal complaint.

(ii) Investigative materials, notes, correspondence, videos and reports.

(iii) A record that includes the identity of a confidential source or the identity of a suspect who has not been charged with an offense to whom confidentiality has been promised.

(iv) A record that includes information made confidential by law or court order.

(v) Victim information, including any information that would jeopardize the safety of the victim.

(vi) A record that, if disclosed, would do any of the following:

(A) Reveal the institution, progress or result of a criminal investigation, except the filing of criminal charges.

(B) Deprive a person of the right to a fair trial or an impartial adjudication.

(C) Impair the ability to locate a defendant or codefendant.

(D) Hinder an agency's ability to secure an arrest, prosecution or conviction.

(E) Endanger the life or physical safety of an individual.

This paragraph shall not apply to information contained in a police blotter as defined in 18 Pa.C.S. § 9102 (relating to definitions) and utilized or maintained by the Pennsylvania State Police, local, campus, transit or port authority police department or other law enforcement agency or in a traffic report except as provided under 75 Pa.C.S. § 3754(b) (relating to accident prevention investigations).

65 P.S. § 67.708(b)(16).

We have previously held that police incident reports, as criminal investigative reports, are investigative materials and fall within the RTKL's investigative exemption at Section 708(b)(16)(ii). *Pa. State Police v. Off. of Open Recs.*, 5 A.3d 473, 479 (Pa. Cmwlth.), *appeal denied*, 76 A.3d 540 (Pa. 2010). Because investigative materials fall within the exemption, investigative materials are not public records and, therefore, are not subject to disclosure. *Id*. at 479. Further, we have specified that where the exemption applies, the entire investigative report falls within the RTKL's investigative exemption and is not subject to public disclosure. 65 P.S. § 67.706(b)(16); *Hunsicker v. Pa. State Police*, 93 A.3d 911, 913 (Pa. Cmwlth. 2014).

Here, Duiker is requesting records that pertain to the investigation of Rogers' disappearance. In fact, in his request, Duiker specifically requests: "the investigation file" and "all police reports, witness statements, photographs, investigative notes and any other documents relating to [the] case." R.R. at 8a. According to Agency Officer Ferguson and the affidavit of Agency Officer Rozier, the Criminal Incident Report is a multi-page report, which includes witness statements, photographs, and investigative notes assembled by Trooper John Marin and other investigating

troopers on or after January 7, 1981, as a result of an investigation into a possible criminal incident or allegation of criminal wrongdoing.  R.R. at 11a.  The Criminal Incident Report reflects the findings and conclusions, as well as the action, observations, and notes of multiple investigating troopers.  *Id*. at 12a, 53a.  Both agency officers attested that the Report, if disclosed, would reveal the institution, progress, and result of a criminal investigation.  R.R. at 12a, 53a.  Both affirmed that the Criminal Incident Report does not contain original records of entry, a chronology of arrest, or other information contained in a police blotter.  R.R. at 12a, 53a.

Nevertheless, Duiker contends the Criminal Incident Report should not be exempt under the RTKL's investigative exemption for several reasons.  First, Duiker attempts to argue that this Court should not consider PSP's investigation into Rogers' disappearance a "criminal investigation" because Rogers was a missing person rather than a person accused of having committed a crime.  However, as Agency Officer Rozier attested to, PSP's investigation was "into a complaint of potential criminal activity concerning a missing person."  R.R. at 53a.  While the RTKL does not specifically define "criminal investigation," we will construe the phrase according to its plain meaning and common usage in compliance with the Statutory Construction Act.  1 Pa. C.S. § 1903(a).  Thus, a criminal investigation is a systematic examination or official inquiry into activity relating to, involving, or being a crime.  *See*, *e.g.*, https://www.merriam-webster.com/dictionary/criminal (last visited March 8, 2023); https://www.merriamwebster.com/dictionary/ investigation (last visited March 8, 2023).  Certainly, PSP's investigation into Rogers' disappearance qualifies as an official inquiry into activity that could relate to or involve criminal activity, regardless of whether the potential crime is solved.

10

Duiker next asserts that because the investigation has been pending for over 40 years and has not resulted in an arrest, the RTKL's investigative exemption should not apply. However, we note that the Criminal Incident Report contains investigative materials, notes, correspondence, and reports, which, if disclosed, would reveal the institution, progress, or result of the criminal investigation. 65 P.S. § 67.708(b)(16). The RTKL does not require criminal charges be filed in order for a record to be shielded from public disclosure under the RTKL's investigative exemption. Additionally, the RTKL does not provide an expiration date for exemptions. The legislature could easily have included provisions to limit the RTKL's exemptions, but it did not. This Court's "duty to interpret statutes does not include the right to add words or provisions that the legislature has left out." *Rogele, Inc. v. Workers' Comp. Appeal Bd. (Mattson)*, 969 A.2d 634, 637 (Pa. Cmwlth. 2009).

Upon review of the affidavits, we are satisfied that PSP met its burden of proving the Criminal Incident Report is exempt under the RTKL's investigative exemption from public disclosure. Although we are empathetic to Rogers' family members and their desire to learn more about Rogers' disappearance, this Court is bound by statutory law and precedent protecting criminal investigative materials from public disclosure.

We also recognize the love in this family as evidenced by a brother-in-law authoring a well-compiled pro se brief and zealously advocating for his sister-in-law, who is the daughter of the missing person. This Court simply does not have the power to circumvent the law.

## CHRIA

Duiker also argues that despite OOR not addressing PSP's argument that the Criminal Incident Report was exempt from disclosure under CHRIA in its Final Determination, OOR "by implication . . . accepted [this argument] as true."[6] Duiker asserts the requested records are not exempt under CHRIA.

Generally, CHRIA governs the collection, maintenance, dissemination, and receipt of criminal history record information. *Mitchell*, 997 A.2d at 1265-66. CHRIA specifically prohibits the dissemination of "investigative information" to any person or entity other than a criminal justice agent or agency. 18 Pa. C.S. § 9106(c)(4). CHRIA defines "investigative information" as: "Information assembled as a result of the performance of any inquiry, formal or informal, into a criminal incident or an allegation of criminal wrongdoing and may include modus operandi information." 18 Pa. C.S. § 9102.

Because we have concluded that the Criminal Incident Report contains PSP investigative materials that document PSP's investigation of Rogers' disappearance, the Criminal Incident Report is "investigative information" and CHRIA prohibits PSP from disseminating it to any non-criminal justice agent or agency.

## CONCLUSION

As discussed above, PSP met its burden in proving that the Criminal Incident Report relates to a criminal investigation, and that it was assembled in conducting a criminal investigation. As a result, the Criminal Incident Report is exempt under

---

[6] We acknowledge that OOR did not address PSP's argument regarding CHRIA in its Final Determination and, instead, decided the records were exempt based on the RTKL's investigative exemption. *See* OOR's Final Determination, *generally*.

both the RTKL's investigative exemption under Section 708(b)(16) and CHRIA. Accordingly, we affirm OOR's Final Determination.

_____
STACY WALLACE, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Neal Duiker,                                    :
                        Petitioner              :
                                                :
        v.                                      : No. 1481 C.D. 2021
                                                :
Pennsylvania State Police                       :
(Office of Open Records),                       :
                        Respondent              :

## **O R D E R**

**AND NOW**, this 9th day of March 2023, the November 15, 2021, Final Determination of the Office of Open Records is **AFFIRMED**.

_____
STACY WALLACE, Judge