******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WESTBROOK, J., dissenting. The majority affirms the Superior Court's dismissal of the administrative appeal brought by the plaintiff, Colin J. Pence, for lack of standing. In doing so, the majority upholds a decision that, in my view, misapplies standing doctrine, disregards the uncontested administrative record, imposes an unsupported standard of "permanent" indigency, and relieves the Superior Court from holding an evidentiary hearing on the very issue it deemed dispositive. Because I would conclude on the basis of this record that the plaintiff met his burden of demonstrating his standing to bring this action, I would reverse the judgment of the Superior Court. Accordingly, I respectfully dissent.

I begin by acknowledging my general agreement with the facts and procedural history set forth in the majority opinion, which I will not repeat. I would only highlight that the administrative record demonstrates that the plaintiff, under oath, testified before the hearing officer that he is indigent, owns no motor vehicle, has no legal access to another's vehicle, and cannot afford to install an ignition interlock device. The plaintiff was not cross-examined, the administrative record contains no facts that contradict the plaintiff's sworn testimony, and the hearing officer did not make any express finding that the plaintiff's testimony in this regard was not credible, nor is such a finding necessarily implied by the hearing officer's ruling in favor of the defendant Commissioner of Motor Vehicles because the plaintiff's indigency and ability to comply with ignition interlock device requirements was not an issue decided by the hearing officer. In my view, these undisputed facts constitute a showing of a present injury sufficient to establish standing.[1]

---

[1] "Standing is established by showing that the party claiming it is authorized by statute to bring [an action] or is classically aggrieved. . . . The fundamental test for determining [classical] aggrievement encompasses a [well settled] twofold determination: first, the party claiming aggrievement must successfully demonstrate a specific, personal and legal interest in [the subject matter of the challenged action], as distinguished from a general

"Standing is the legal right to set judicial machinery in motion. . . . Standing . . . is not a technical rule intended to keep aggrieved parties out of court; nor is it a test of substantive rights. Rather it is a practical concept designed to ensure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." (Citations omitted; internal quotation marks omitted.) *Webster Bank* v. *Zak*, 259 Conn. 766, 774, 792 A.2d 66 (2002). "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . . Standing requires no more than a colorable claim of injury; a [party] ordinarily establishes . . . standing by allegations of injury." (Internal quotation marks omitted.) *St. Germain* v. *LaBrie*, 108 Conn. App. 587, 591, 949 A.2d 518 (2008).

Furthermore, standing ordinarily must be assessed in reference to the time an action is initiated. See, e.g., *Deutsche Bank National Trust Co.* v. *Bliss*, 159 Conn. App. 483, 488, 124 A.3d 890 ("in order to have standing to bring a foreclosure action the plaintiff must, *at the time the action is commenced*, be entitled to enforce the promissory note that is secured by the property" (emphasis in original; internal quotation marks omitted)), cert. denied, 320 Conn. 903, 127 A.3d 186 (2015), cert. denied, 579 U.S. 903, 136 S. Ct. 2466, 195 L. Ed.

interest, such as is the concern of all members of the community as a whole. Second, the party claiming aggrievement must successfully establish that this specific personal and legal interest has been specially and injuriously affected by the [challenged action]. . . . Aggrievement is established if there is a possibility, as distinguished from a certainty, that some legally protected interest . . . has been adversely affected." (Internal quotation marks omitted.) *State* v. *Bradley*, 341 Conn. 72, 80, 266 A.3d 823 (2021). The administrative record supports that the plaintiff satisfies both the first and second prongs of this test and, thus, is classically aggrieved.

2d 801 (2016); see also *Davis* v. *Federal Election Commission*, 554 U.S. 724, 734, 128 S. Ct. 2759, 171 L. Ed. 2d 737 (2008) ("the standing inquiry [is] focused on whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed*" (emphasis added)).[2] The Superior Court and the majority focus not on the plaintiff's circumstances when he commenced the underlying action, but on what his circumstances *might* be in the future. In doing so, they appear to obscure the present nature of the injury alleged and conflate standing with the possibility that the plaintiff's claim may become moot or otherwise nonjusticiable in the future if his present circumstances should change. Standing to raise a constitutional injury arises from present conditions, even if those conditions may not prove to be immutable. See *Friends of the Earth, Inc.* v. *Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000) (discussing analytical distinctions between standing and mootness and noting that "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)" (internal quotation marks omitted)). That the plaintiff, at some future time, may no longer be indigent or otherwise may acquire the ability to comply with the statutory ignition interlock device requirements is speculative and, in my view, an improper inquiry for the present standing analysis.

The Superior Court, when reviewing an administrative appeal under General Statutes § 4-183, ordinarily must confine itself to the agency record. Section 4-183 (i) provides in relevant part: "The appeal shall be

---

[2] I agree with the plaintiff's argument that, "[a]lthough standing in Connecticut is not controlled by article III [of] the United States constitution or associated case law, the doctrine of standing in Connecticut closely aligns with its federal counterpart and focuses upon the key question of whether a litigant has made a colorable claim of direct injury actually suffered or likely to be suffered."

conducted by the court without a jury and shall be confined to the record. If alleged irregularities in procedure before the agency are not shown in the record or if facts necessary to establish aggrievement are not shown in the record, proof limited thereto may be taken in the court. . . ." From the time of his arrest in August, 2022, through at least the time of oral argument before this court in March, 2025, there is nothing in the record demonstrating that the plaintiff's financial status or circumstances has changed, a further indication that this is not a case of temporary hardship. To resolve the criminal charges against him, the plaintiff was represented by a public defender—a status that required a formal indigency determination under General Statutes § 51-297. The plaintiff submitted a copy of his sworn application to support his claim of indigency. No contrary evidence was submitted and, as previously stated, the administrative agency made no adverse findings regarding his claim of indigency. Nevertheless, the Superior Court dismissed the action sua sponte, indicating that the plaintiff offered no evidence that his circumstances were "more than transitory or temporary in nature," noting, for instance, that the plaintiff did not establish whether his parents charged him for rent or other expenses.

Here, although the hearing officer did not decide the constitutional issue, it permitted the plaintiff to create a record in support of his claim. The Superior Court, rather than confining itself to the administrative record, made additional factual determinations without holding an evidentiary hearing at which the plaintiff would have had an opportunity to respond to the court's sua sponte standing concerns. In my view, if a plaintiff must show that they are permanently indigent in order to challenge a law that burdens the indigent, then few, if any, plaintiffs will ever be able to meet that threshold. This effec-

tively renders the statute immune from challenges by those it harms most.

The Superior Court's conclusion that the plaintiff lacked standing because he may not be "permanently" indigent is also problematic. Statutory definitions of indigency can be found in General Statutes §§ 51-297 (f)[3] and 52-259b[4]—which are both based on *current* financial status, not on a showing of "permanent" indigency. Each of these provisions focuses on present financial hardship, not an indefinite economic status. The ignition interlock device statutes themselves provide for a reduction or elimination of charges associated

[3] General Statutes § 51-297 (f) provides in relevant part: "(1) As used in this chapter, 'indigent defendant' means (A) a person who is formally charged with the commission of a crime punishable by imprisonment and who does not have the financial ability at the time of his request for representation to secure competent legal representation and to provide other necessary expenses of legal representation . . . .

"(2) An assessment determining whether a person has the financial ability to secure competent legal representation and to provide other necessary expenses of legal representation or qualifies as an indigent defendant pursuant to subdivision (1) of this subsection shall be based upon guidelines established by the commission. The commission shall annually establish such guidelines providing that a person whose income, calculated as described in such guidelines, is two hundred fifty per cent or less of the federal poverty level may qualify as an indigent defendant. The commission shall make such guidelines available to the public on the Division of Public Defender Service's Internet web site."

[4] General Statutes § 52-259b provides in relevant part: "(a) In any civil or criminal matter, if the court finds that a party is indigent and unable to pay a fee or fees payable to the court or to pay the cost of service of process, the court shall waive such fee or fees and the cost of service of process shall be paid by the state.

"(b) There shall be a rebuttable presumption that a person is indigent and unable to pay a fee or fees or the cost of service of process if (1) such person receives public assistance, or (2) such person's income after taxes, mandatory wage deductions and child care expenses is one hundred twenty-five per cent or less of the federal poverty level. For purposes of this subsection, 'public assistance' includes, but is not limited to, state-administered general assistance, temporary family assistance, aid to the aged, blind and disabled, supplemental nutrition assistance and Supplemental Security Income. . . ."

with the installation, maintenance or removal of ignition interlock devices for indigent persons. See General Statutes § 14-227o.[5] A person may establish indigency by providing to a provider of ignition interlock device services proof of participation in the state's supplemental nutrition or home energy assistance programs.[6] None of the aforementioned statutes, however, requires a party to demonstrate that his or her financial circumstances will remain the same in the future. The plaintiff's existing indigency at the time he commenced this action rendered him unable to meet the conditions to regain his license. That is the injury relevant to the standing inquiry. Stated differently, before the administrative agency, the plaintiff raised an equal protection claim based on his indigency determination for public defender services. The Superior Court simply had no evidence before it to dispute the testimony and exhibits presented before the hearing officer and, in my view, impermissibly strayed from the administrative record.

The Superior Court's handling of the standing analysis is further undermined by its late articulation of a

---

[5] General Statutes § 14-227o provides in relevant part: "Notwithstanding any provision of the general statutes requiring a person subject to an order to install and maintain an ignition interlock device to bear all costs associated with such installation and maintenance, any provider of ignition interlock device services, including installation, maintenance and removal of such devices, may include in a lease agreement with a person required to install such device . . . a reduction to or an elimination of the charge for such services if such person is indigent. Such person may provide to the provider of such ignition interlock device services as proof of indigency a valid participation card or letter indicating participation in the state-administered federal Supplemental Nutrition Assistance Program or the state-administered federal Low Income Home Energy Assistance Program. Any such letter shall be on letterhead stationery of the Department of Social Services and in original form."

[6] Although the financial assistance provided for in § 14-227o arguably undermines, at least in part, the merits of the plaintiff's constitutional claim, it does not resolve it entirely because the statute does not address the issue of an indigent party's inability to obtain a vehicle in which to install an ignition interlock device.

legal standard for rejecting the plaintiff's assertion of indigency, which the court first produced in its response to the plaintiff's motion for reconsideration and reargument. For the first time, the Superior Court cites to the general definition of indigency contained in Black's Law Dictionary, rather than considering and applying one of the statutory definitions adopted by the Connecticut legislature and courts. Dictionary definitions may aid in legal interpretations, but they do not supplant statutory legal standards. By adopting a nonbinding dictionary definition, the court introduced a heightened standard for indigency that risks inconsistent application in future cases. The court further advances another unsupported element, asserting that the plaintiff could not prevail because he would not face "infinite license suspension"—a classification that creates an unnecessarily narrow conception of harm.

In short, I conclude that the plaintiff's uncontested testimony before the hearing officer placed him squarely within the class allegedly burdened by the statute. I would hold that the plaintiff has demonstrated standing to pursue his equal protection claim—or at the very least, he was entitled to an evidentiary hearing to produce facts in support of his claim.[7] Accordingly, I would reverse the judgment of the court.

I respectfully dissent.

---

[7] My disagreement with the court's resolution of this matter on standing grounds should not be misconstrued as any indication regarding the relative strength of the plaintiff's underlying equal protection claims. Under existing precedent, indigency is not a class that implicates either strict or intermediate scrutiny and other courts that have considered similar claims as those raised in the present case have rejected them upon rational basis scrutiny. See, e.g., *Probst* v. *Pennsylvania*, 578 Pa. 42, 54–58, 849 A.2d 1135 (2004). Whether the plaintiff was likely to prevail on his claims has no bearing on whether the plaintiff met the relatively low bar to establish standing to assert his claims.